IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MISSOURI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:22-cv-191-MTS |
| v. | ) ) | |
| WENTZVILLE R-IV SCHOOL DISTRICT, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF AMICI CURIAE AMERICAN BOOKSELLERS FOR FREE EXPRESSION, ASSOCIATION OF AMERICAN PUBLISHERS, INC., AUTHORS GUILD, INC., AND COMIC BOOK LEGAL DEFENSE FUND IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

American Booksellers for Free Expression, Association of American Publishers, Inc., Authors Guild, Inc., and Comic Book Legal Defense Fund respectfully submit this brief as amici curiae in support of Plaintiffs' Motion for a Preliminary Injunction.

### Interest of Amici Curiae

Amici's members ("Amici") write, create, publish, produce, distribute, and sell books and literary works of all types, including materials that are scholarly, educational, artistic, scientific, and entertaining. All of amici both practice and promote free expression and the free exchange of ideas.

Amici strongly support and encourage making available to students a broad selection of fiction and non-fiction reading material, including that which challenges them. Therefore they

have a significant interest in preventing the imposition of unconstitutional governmental limitations on the content of First Amendment-protected communicative materials they choose to read – whether directly, by censorship or removal from access, or indirectly, by content-based taxation, labeling requirements, restrictions on manner of sale, or other means.

Amici have brought actions in both federal and state courts to assert the unconstitutionality of laws that infringe the First Amendment protections of Americans of all ages, including *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988), and *Powell's Books, Inc. v. Kroger,* 622 F.3d 1202 (9th Cir. 2010).

Amici also have filed a number of amicus briefs in the U.S. Supreme Court, other federal courts, and state courts addressing First Amendment issues, including *United States v. Alvarez,* 132 S. Ct  2537 (2012), *Tennessee v. Marshall,* 859 S.W.2d 289  (Tenn. Sup. Ct. 1993) and *Porco v. Lifetime Entertainment Services, LLC*, 195 A.D.3d 1351 (N.Y. App. Div 2021). Amici believe that it is particularly important to present the perspective of mainstream creators, producers, distributors, retailers, and consumers when as in this case an important First Amendment issue arises involving speech that some may view as being outside of the mainstream.

## Introduction

In the interest of judicial economy, we rely on the statement of the Background of this matter in Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction.

After reviewing Defendant's Memorandum in Opposition, several things remain clear:

1. All of the eight challenged books which are the subject of this lawsuit (the "Banned Books") are protected by the First Amendment.

    2.    The fact that some of the material may be considered by some persons as inappropriate to some younger children does not justify blocking access to all students, including those in older grades.

**I.**    **The Banned Books Are First Amendment-Protected.**

Recognizing the significant First Amendment implications of attempts to "protect" minors from exposure to sexually explicit materials, the U.S. Supreme Court created a narrow test for determining which sexually explicit materials are constitutionally unprotected as to minors, while constitutionally protected as to adults. In *Ginsberg v. New York*, 390 U.S. 629 (1968), as subsequently modified by *Miller v. California*, 413 U.S. 15 (1973), the Court declared only explicit sexual materials which, <u>taken as a whole</u>:

1. predominantly appeals to the prurient, shameful or morbid interest of minors;
2. is patently offensive to prevailing standards in the adult community with respect to what is suitable material for minors; and
3. lacks serious literary, artistic, political, or scientific value for minors

is constitutionally unprotected as to minors. *See Upper Midwest Booksellers Ass'n v. Minneapolis*, 780 F.2d 1389, 1390 (8th Cir. 1985).

In *Ginsberg*, 390 U.S. at 649-50, the Supreme Court determined that the state's interest in the well-being of youth, and the provision of support for parents' authority to direct the rearing of their own children in their own household, constituted a compelling interest that allowed the restriction of some materials not deemed obscene as to adults. *See also Reno v. ACLU*, 521 U.S. 844, 865 (1997). It is the state's burden to show that laws that suppress speech are narrowly tailored and, that a less restrictive provision would not accomplish the same goals as the law being challenged. *Id.* at 879.

However, only material which meets the *Miller/Ginsberg* test can be barred from distribution to minors. If a statute goes beyond that, the state has not met its burden to show that the statute is "narrowly tailored" under the strict scrutiny test.

While the *Miller/Ginsberg* standard does not have to be repeated verbatim for a restriction to comply, the substantive requirements of the test must be embodied in any such statute. The Missouri definition of "pornographic for minors" encompasses the *Miller/Ginsberg* standard. Mo. St. 573.010(14).

As demonstrated below, the Banned Books do not meet all of these requirements; in fact, they likely do not meet any of them.

First, the Banned Books clearly have serious literary, artistic, political, or scientific value for minors, as evidenced by the dozens of awards and plaudits received by the Banned Books. A few of the most notable recognitions are noted below. Indeed, many of the Banned Books' awards and recognitions specifically lauded the Banned Books' contribution to the academic and social development of minors, as indicated in bold face below.

<u>*The Bluest Eye* by Toni Morrison</u>

- Included in ***Best Books for Senior High Readers***
- **Used by teachers in the Advanced Placement English curriculum for decades**
- Story about the **experiences of a young black girl is exactly the type of selection that would enhance the diversity of any high school library collection**
- Exemplar text by the **Common Core State Standards for English Language Arts & Literacy in History/Social Studies, Science, and Technical Subjects**
- Fact that it "deals with **child sexual abuse renders it of value to students; child sexual abuse is an issue faced by thousands of children in the state of Missouri, as evidenced by the fact that the Missouri Department of Social Services calls attention to this very issue every year with an annual report on incidents in the state.**"
- The *New York Times* stated that *The Bluest Eye* was "[s]o precise, so faithful to speech and so charged with pain and wonder that the novel becomes poetry."

4

- Toni Morrison is among the most decorated and important of contemporary American authors. She was a woman of color who wrote from a perspective that speaks to many audiences, but importantly centers the perspectives of Black characters and readers.

(Exhs. 33,51,52)

<u>Heavy</u> by Kiese Laymon

- *Library Journal* wrote that the memoir "breaks down **what it means to be a large black boy growing up in Mississippi."**
- Andrew Carnegie Medal for Excellence in Nonfiction
- The *New York Times* included *Heavy* in their list of the best 50 memoirs in the past 50 years.

(Exh. 33)

<u>Modern Romance: An Investigation</u> by Aziz Ansari and Eric Klinenberg

- *Booklist* wrote that **"[t]eens are slaves to their devices, too, and Ansari's funny observations will provide some much-needed perspective."**
- Goodreads Choice award for Non-Fiction in 2015
- *New York Times* Bestseller

(Exh. 33)

<u>Gabi, A Girl in Pieces</u> by Isabel Quintero

- *School Library Journal* called it a **"coming-of-age novel with Latino protagonists."**
- **William C. Morris Award for Young Adult Debut Novel**
- ***School Library Journal* Best Books of 2014**
- Isabel Quintero has received a multitude of positive reviews for a book that provides a wonderful **perspective of a young girl growing up Latina in the United States.**

(Exh. 33)

<u>Fun Home: A Family TragiComic</u> by Alison Bechdel

- **American Library Association Outstanding Books for the College Bound by the**
- **Duke University Freshman Read for the incoming Class of 2019**

5

121180751

- With its exploration of sexual identity and in its graphic novel format, it is the type of book that would be **an appropriate choice for a diverse high school library collection.**
- Eisner Award for Best Reality-Based Work
- Best Book of the Year by *Time Magazine*
- *Entertainment Weekly* number one Nonfiction Book of the Year

(Exhs. 33, 40)

*Invisible Girl* by Lisa Jewell

- About a **young woman of mixed race, it is the type of book that would appeal to teenagers and an appropriate selection for a diverse high school collection**.
- *New York Times* Bestseller and mystery novel, a very popular genre for high school students

(Exh. 33)

*All Boys Aren't Blue* by George M. Johnson

- **School Library Journal** called *All Boys Aren't Blue* a "contemporary hallmark of the blossoming genre" that provides "encouragement and realistic **guidance for queer Black youth.**"
- **New York Library Best Book of 2020 for young adults**
- Amazon Best Book of the Year
- 2021 Texas Topaz Nonfiction Reading List Pick

(Exh. 33)

*Lawn Boy* by Jonathan Evison

- **School Library Journal** called it a novel that "takes on tough issues such as race, sexual identity, and the crushing weight of American capitalism" and **urged librarians to "[g]ive this flawed but exciting coming-of-age story to teens eager to engage with heavy and political issues**."
- **Alex Award** from the **Young Adult Library Services Association**
- Booklist 2018 Editor's Choice

(Exh. 33)

6
121180751

These credentials certainly demonstrate serious literary, artistic, political or scientific value for minors.

Nothing has been put forward by the School Board, nor do amici believe there can be anything, to demonstrate that taken as a whole, any of the Banned Books appeal to the prurient interest of minors; taken as a whole any of them are patently offensive to the adult community as to what is suitable for minors; and taken as a whole any of them lack serious value.  Nor did the School Board's process seek to review the books taken as a whole, even though it was suggested that the reviewers read the books.  Rather, the School Board's Challenged Material Form has a section called "Description of objectionable aspects of the material" containing excerpts with page numbers.

In the absence of any statements to the contrary, we are left only with the statement that the book was obscene by a Board member during the hearing that led to the initial banning by the Board of Toni Morrison's *The Bluest Eye*.  While the book by Toni Morrison, a Pulitzer Prize and Nobel Prize winner, includes isolated descriptions of child abuse (incest) and sexually explicit material, it is clearly not obscene under the *Miller* test. Were it obscene, which the uses and plaudits listed above demonstrate that it is not, it would be a crime to have it for sale in any bookstore in Missouri or to have it in any public or private library in the state.

II.   **The School Board's Procedures Unconstitutionally Restrict Older Minors' First Amendment Rights.**

Defendant's memorandum suggests that the Banned Books may be too mature for younger students, that they may be "pornographic" for younger minors. The Supreme Court has ruled in many contexts that the First Amendment protects minors as well as adults, and that minors have a constitutional right to speak and to receive the information and ideas necessary for their intellectual development and their participation as citizens in a democracy, including information about

7

reproduction and sexuality. *See Board of Educ. v. Pico*, 457 U.S. 853, 865, 870-71 (1982) (First Amendment rights apply to students in the school setting and therefore local school boards could not remove books from school library shelves simply because they disliked the ideas contained in those books); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212-14 (1975) (minors are entitled to a "significant measure" of constitutional protection); *Tinker v. Des Moines Indep. Comm. School Dist.*, 393 U.S. 503, 511 (1969) (school district could not suspend student for engaging in constitutionally protected expressive conduct); *Carey v. Population Servs., Int'l*, 431 U.S. 678, 693 (1977) (state cannot ban distribution of contraceptives to minors) (plurality opinion).

The Board's Procedures and action impermissibly burden the right of older minors to obtain ideas and information about sexuality, reproduction, and the human body–subjects that are of special interest to maturing adolescents. Recognizing this problem, courts in other states have upheld statutes regulating the dissemination of material deemed "harmful to minors" only after construing them to prohibit only that material that would lack serious value for older minors. *See Am. Booksellers Ass'n v. Webb*, 919 F.2d at 1505 (concluding that "if any reasonable minor, including a seventeen-year-old, would find serious value, the material was not 'harmful to minors' for purposes of the statute); *Am. Booksellers Ass'n v. Virginia*, 882 F.2d 125 (4th Cir. 1989) (concluding that "if a work is found to have a serious literary, artistic, political or scientific value for a legitimate minority of normal, older adolescents, then it cannot be said to lack such value for the entire class of juveniles" (quoting *Commonwealth v. Am. Booksellers Ass'n, Inc.*, 372 S.E.2d 618, 624 (Va. 1988)).

In removing the Banned Books, the Board failed to consider the value of the Banned Books to older minors and their constitutional rights.

8

**Conclusion**

The actions of the School Board in removing the First Amendment-protected Banned Books from the library – some for limited periods of time, some permanently[1] – so that they may not be accessed by students, is unconstitutional and should be enjoined. Any such restriction, even for a limited period, is unconstitutional. *Elrod v. Burns,* 427 U.S. 347, 373 (1976).

Dated:  April 11, 2022

Respectfully submitted,

DENTONS US LLP

By: /s/ *Roger K. Heidenreich*
    Roger K. Heidenreich, # 40898MO
    One Metropolitan Square, Suite 3000
    St. Louis, MO 63102
    Telephone:  (314) 241-1800
    Facsimile:  (314) 259-5959
    roger.heidenreich@dentons.com

*Attorney for Amici American Booksellers for Free Expression, Association of American Publishers, Inc., Authors Guild, Inc,. and Comic Book Legal Defense Fund*

Of Counsel:

Michael A. Bamberger
Kristen C. Rodriguez
Dentons US LLP
1221 Avenue of the Americas, 25th Floor
New York, NY 10020
michael.bamberger@dentons.com

---

[1] Under the Board's procedure, an objection from a single person is enough to pull a book from the library shelves for an indeterminate period of time, a form of governmentally imposed literary limbo.

121180751

## Appendix A

The **American Booksellers for Free Expression** ("ABFE") is the free speech initiative of the American Booksellers Association ("ABA").  ABA was founded in 1900 and is a national not-for-profit trade organization that works to help independently owned bookstores grow and succeed.  ABA represents 1,900 member companies operating in 2,400 locations.  ABA's core members are key participants in their communities' local economy and culture.  To assist them, ABA provides education, information dissemination, business products, and services; creates relevant programs; and engages in public policy, industry, and local first advocacy.

The **Association of American Publishers, Inc**. ("AAP"), a not-for-profit organization, represents the leading book, journal, and education publishers in the United States on matters of law and policy, advocating for outcomes that incentivize the publication of creative expression, professional content, and learning solutions.  AAP's members range from major commercial book and journal publishers to small, non-profit, university, and scholarly presses, as well as leading publishers of educational materials and digital learning platforms.  AAP's members publish a substantial portion of the general and educational books produced in the United States, some of which include images of nudity or sexual conduct.  Its members are active in all facets of print and electronic media, including publishing a wide range of electronic products and services.  AAP represents an industry whose very existence depends on the free exercise of rights guaranteed by the First Amendment.

The **Authors Guild, Inc**. (the "Guild") was founded in 1912, and is a national non-profit association of more than 10,000 professional, published writers of all genres.  The Guild counts historians, biographers, academicians, journalists, and other writers of non-fiction and fiction as members.  The Guild works to promote the rights and professional interest of authors in various areas, including copyright, freedom of expression, and taxation.  Many Guild members earn their livelihoods through their writing.  Their work covers important issues in history, biography, science, politics, medicine, business, and other areas; they are frequent contributors to the most influential and well-respected publications in every field.

The **Comic Book Legal Defense Fund** ("CBLDF") is a non-profit corporation dedicated to defending the First Amendment rights of the comic book industry.  CBLDF represents over 1,000 comic book authors, artists, retailers, distributors, publishers, librarians, and readers located throughout the country and the world.

10

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a copy was made available electronically to all electronic filing participants.

/s/ <i>Roger K. Heidenreich</i>

121180751