## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| MISSOURI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WENTZVILLE R-IV SCHOOL DISTRICT, <br><br> Defendant. | Case No. 4:22-cv-191-MTS |

**REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Named Plaintiffs seek prospective relief on behalf of a class of similarly situated persons: current and future students in District schools who use, or will use, a District school library to access information (the "Class").[1] Each member of this Class is uniformly subject to the same District book-removal policy that Plaintiffs challenge as unconstitutional in this case. Movants satisfy the requirements of Federal Rule of Civil Procedure Rules 23(a)[2] and (b)(2) and the motion for class certification should be granted.

**A. Class certification would serve useful purposes here.**

---

[1] To the extent that the District is concerned about controlling access to curricular materials, Plaintiffs acknowledge that this case is limited to non-curricular materials only and agree to limiting the Class definition to: current and future students in District schools who use, or will use, a District school library to access information within non-curricular library materials. *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377–78 (8th Cir. 2018) (modifying class definition where both parties agree it should be narrowed).

[2] The District does not challenge Plaintiffs' arguments regarding the numerosity and commonality elements of a Rule 23(a) claim. As such, those elements should be deemed satisfied for the reasons stated in Plaintiffs' memorandum in support of motion for class certification, ECF No. 27.

1

Plaintiffs seek class certification for the precise reason that the District gives for its opposition: "the Court would be able to issue a single order enjoining the District from removing access to library books pursuant to its policies and regulations." (ECF No. 29 at 1). Indeed, class certification would efficiently and economically resolve the issues presented in this lawsuit by providing relief to the entire class. *See infra* p. 6. Plaintiffs seek to determine the First Amendment right to access ideas and information of all current and future District students, preventing the need for duplicative litigation by others.

Class certification may also be relied upon to ensure equal application to other current and future District students if the Named Plaintiffs graduate or their families move outside of the District before this case can be fully resolved. Where, as here, the Named Plaintiffs' claims could become moot, the "risk of mootness creates a sufficient need for class certification." *Lebron v. Wilkins*, 277 F.R.D. 664, 666 (M.D. Fla. 2011) (finding that class certification was appropriate to avoid mootness issues, nothing that the average tenure of any individual beneficiary in state benefits programs was shorter than the average length of the federal litigation process); *accord Barrett v. Claycomb*, 11-CV-04242-NKL, 2011 WL 5822382, *2 (W.D. Mo. Nov. 15, 2011), *aff'd in part, rev'd in part by Kittle-Aikeley v. Strong*, 844 F.3d 727 (8th Cir. 2016) (en banc), *cert. denied* 137 S. Ct. 2216 (2017) (class certification not challenged on appeal) (certifying class of college students challenging school policy requiring mandatory drug testing, noting that individual lawsuits would be impracticable given the large number of potential plaintiffs and fluid nature of students passing through school); *Hoehle v. Likins*, 538 F.2d 229, 231 (8th Cir. 1976) (finding that district court erred in declining to certify a class action where "risk of mootness is great in this litigation and the issue raised is important not only to appellee, but others similarly situated").

### B. Plaintiffs' claims are typical of other members of the class.

The Rule 23(a)(3) typicality standard does not require unanimity. "Typicality means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Barrett*, 2011 WL 5822382, at *2 (citing *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir.1977)). "The [typicality] burden is 'easily met so long as other class members have claims similar to the named plaintiff.'" *Barrett*, 2011 WL 5822382, at *2 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir.1995)). "[T]he potential for minor factual variations does not undermine . . . [a] conclusion that the violation allegedly suffered by the Named Plaintiffs is typical of that suffered by the class as a whole." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018) (citation and quotation omitted).

Regardless of individual differences that may exist among the views of District students as to specific books or viewpoints, "each continues to be subject to the same policies and procedures−or lack thereof−that allegedly creates a substantial risk of harm." *M.B. by Eggemeyer v. Corsi*, 327 F.R.D. 271, 281 (W.D. Mo. 2018) (granting certification of class of children in state foster care in civil rights suit arising from the "same course of conduct"); *accord Webb v. City of Maplewood*, 340 F.R.D. 124, 137 (E.D. Mo. 2021) ("While the specific circumstances of class members may differ with regard to the nature and amount of the bonds imposed, whether they were paid, and the manner by which they were paid, the policy of requiring payments before allowing access to court applies to all."). Here, the claims of Named Plaintiffs and the Class arise from the District's common course of conduct—enforcement of the policy—and raise a single legal theory: that the challenged policy restricts students' First Amendment right to access library materials. *See* Charles Alan Wright et al., *Federal Practice and Procedure* § 1763 (4th ed. 2021) ("Consequently, many courts have found typicality if the claims or defenses of the

3

representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory."). That right is restricted in the *same* way as to each student who seeks to access library materials.³

Although the District alleges that one student and two parents expressed some dislike of one or more of the Banned Books themselves, that allegation is not relevant to Plaintiffs' constitutional claim regarding the policy itself, which applies equally to all students and governs removals not only of the Banned Books, but also of any books that may be challenged in the future. To the extent that this type of inquiry could be relevant, there is no evidence in the record that any students or parents support broad application of the challenged District policy to any and all school library books or believe that any student or parent should be able to force the automatic banning of any book for all students based on their disagreement with the book's viewpoint, regardless of the viewpoint. Conversely, Plaintiffs presented evidence that other District students and parents besides the Named Plaintiffs object to the District's policy and removal of books. (ECF No. 19-32 at ¶10). A putative class member who might not wish to read one of the Banned Books would nonetheless benefit from a decision upholding their First Amendment right to access other materials in school libraries given that the proposed Class is limited those who will use the library to access information that the policy permits to be banned. Ultimately, the District policy of removing books applies to all students, and the viewpoints of a few individuals regarding a few books are not determinative of the legal issue of whether the District policy is unconstitutional. Plaintiffs have satisfied their burden of demonstrating typicality.

---

³ Review of the merits at this stage is limited and precludes, *inter alia*., considering whether Plaintiffs have stated a claim under their legal theory. *Postawko*, 910 F. 3d at 1041.

4

### C. Plaintiffs will fairly and adequately protect the interests of the class.

"The purpose of the adequacy requirement is to ensure that there are no potential 'conflicts of interest between the named parties and the class they seek to represent.'" *Barrett*, 2011 WL 5822382, at *3 (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997)). The District does not identify any conflicts of interest presented by upholding the constitutional rights of District students, nor does it challenge the competency, experience, and qualifications of proposed Class counsel.

"Plaintiffs seeking to represent a class need not show that all class members agree with them." *Van Orden v. Meyers*, 4:09CV00971 AGF, 2011 WL 4600688, *9 (E.D. Mo. Sept. 30, 2011) (internal citation omitted). The District's suggestion that there may be some possible divergence in goals among students is insufficient to preclude class certification because the same issues would be resolved for all class members:

> Because class actions of this nature [--i.e., civil-rights cases seeking prospective relief against school policies--] are specifically intended to address questions that affect a group as [a] whole and to insure there is consistency in the application of the law, it would be contrary to the purpose of class actions to deny certification because some members might not want to litigate the issue in dispute. Indeed, the Defendants as well as the class benefit from having the issue resolved for everyone, so that piecemeal litigation for and against the policy is avoided. Students at any time can express their individual support for the policy or can execute waivers of any [constitutional] rights they have. However, they do not have the right to prevent the matter being resolved as a class action.

*Barrett*, 2011 WL 5822382, at *4. Similar to *Barrett*, individual students and parents may choose to opt-out of reading certain books or express their support for the policy or particular decisions or actions under the policy, but their purported willingness to waive their own constitutional rights cannot prevent the use of class certification to resolve the constitutional rights of all District students.

### D. The requested relief is appropriate for the class as a whole.

This is a quintessential Rule 23(b)(2) case because "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *accord Postawko*, 910 F.3d at 1039–40. A challenge to the constitutionality of a generally applicable policy falls "squarely within the purpose of Rule 23(b)(2) to allow class actions vindicating civil rights." *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) ("Because one purpose of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights, the rule 'must be read liberally in the context of civil rights suits.'") (citations omitted). Here, the Class claims are cohesive such "that the relief sought [will] perforce affect the *entire class at once.*" *Webb*, 340 F.R.D. at 137 (internal quotations and citations omitted). This case does not require any evidence or adjudication of the opinions of any particular student, but instead concerns a policy that uniformly impacts all District students "in the exact same way," in that *all* students are deprived of access to materials that are temporarily or permanently removed from library shelves pursuant to District policy. *Barrett*, 2011 WL 5822382, at *4. The common factual and legal issues regarding the District's policy will not differ from student to student, and the relief will be the same for all: declaratory and injunctive relief targeting the District's violation of students' First Amendment rights. Because Plaintiffs' challenge to the District's "policy is premised on a ground that is applicable to the entire class, Rule 23(b)(2) is satisfied." *Webb*, 340 F.R.D. at 137.

For the foregoing reasons, as well as those in Plaintiffs' Memorandum in Support, movants satisfy the requirements of Federal Rule of Civil Procedure Rules 23(a) and (b)(2) and the motion for class certification should be granted.

                Respectfully submitted,

                /s/ Molly E. Carney
                Molly E. Carney, #70570MO

Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
Emily Lazaroff, #73811MO
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org
mcarney@aclu-mo.org
elazaroff@aclu-mo.org

Gillian R. Wilcox, #61278MO
ACLU of Missouri Foundation
406 W. 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
gwilcox@aclu-mo.org

Vera Eidelman
ACLU Foundation
125 Broad St., 18 Fl.
New York, NY 10004
Phone: (212) 549-2500
veidelman@aclu.org

*Attorneys for Plaintiffs*