**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MISSOURI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 4:22-cv-191-MTS |
| WENTZVILLE R-IV SCHOOL DISTRICT, | ) ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**

Defendant's motion to stay, ECF No. 35, should be denied for the following reasons: (1) the motion overlooks the fact that this lawsuit targets not only the permanent removal of the Banned Books that may be caused by the District's policy, but also the policy pursuant to which those books were removed automatically upon challenge on the basis of viewpoint—a policy that remains in full effect; (2) the District does not demonstrate that it would face any hardship or inequity from proceeding with resolution of this matter at least so long as Plaintiffs lack preliminary injunctive relief; (3) further delay of resolution by even "one or two months" disregards the District's ongoing, daily violation of Plaintiffs' rights; and (4) because Plaintiffs challenge District policy, simply returning the Banned Books to school libraries would not resolve this case.

   **I.**   **Standard for Stay**

A stay is only proper where "the suppliant for a stay [has made] out a clear case of hardship or inequity in being required to go forward." *Landis v. North Am. Co.*, 299 U.S. 248,

1

255 (1936); *accord Jones v. Clinton*, 72 F.3d 1354, 1365 (8th Cir. 1996), *aff'd*, 520 U.S. 681 (1997) (Beam, J., concurring) (confirming the burden is on the party "seeking to delay the usual course of discovery and trial" and the presumption favors the party opposing the stay).[1] In addition, when reviewing a motion to stay, courts in this district typically also consider factors including "the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it and the potential prejudice to plaintiffs of a delay," "the interests of persons not parties to the civil litigation," and "the interest of the public in the pending . . . litigation." *Busey Bank v. Benja Inc.*, No. 4:20CV1473 HEA, 2021 WL 694824, at *1 (E.D. Mo. Feb. 23, 2021); *see also Aldridge v. City of St. Louis, Mo.*, No. 4:18-CV-1677 CAS, 2020 WL 223928 (E.D. Mo. Jan. 15, 2020).[2]

---

[1] The two Iowa District Court cases cited by the District are neither binding nor instructive. *Middleton, Inc. v. Minn. Mining & Mfg.*, No. 4:03-CV-40493, 2004 WL 1968669, at *6 (S.D. Iowa Aug. 24, 2004) concerned a request for stay in a patent infringement lawsuit pending reexamination of a patent by the Patent and Trademark Office (PTO), with the court noting the "technical expertise" of the PTO. In *CRST Expedited, Inc. v. Swift Transp. Co. of Ariz., LLC*, No. 17-CV-25-CJW, 2018 WL 3966961, at *8 (N.D. Iowa Aug. 17, 2018), which involved non-competition employment contracts, the Court denied a motion for stay during the pendency of an appeal in a related case, explaining that "although the possibility for simplification exists, that possibility is too tenuous to form a basis upon which the Court may stay the case." These cases involved formal review of related cases by a federal agency and another District court judge, respectively, in contrast to the review of the Banned Books by a District-appointed committee and Board. Moreover, these cases did not involve constitutional claims or governmental policies.

[2] The District's reliance on *Middleton*, 2004 WL 1968669, is misplaced for the additional reason that neither this Court nor the Eighth Circuit applies the factors *Middleton* employed. In cases involving a request to stay pending parallel litigation, "[t]his Court and other district courts in the Eighth Circuit have generally considered the following factors . . . : (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Busey*, 2021 WL 694824, at *1.

2

## II. The District has not met its burden of demonstrating a clear case of hardship or inequity absent a stay.

The District has not explained how moving forward with the lawsuit at this stage would subject it to any particular hardship or inequity. *See Landis*, 299 U.S. at 255. "[T]he expense and annoyance of litigation is part of the social burden of living under government." *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (internal quotation marks omitted). "'Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'" *Id.* (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974). Moreover, "case management standing alone is not necessarily a sufficient ground to stay proceedings." *U.S. Bank Nat'l Ass'n v. Moses*, No. 4:16-CV-730-CEJ, 2016 WL 7178750, at *2 (E.D. Mo. Dec. 9, 2016) (denying motion for stay) (internal citation omitted). Here, the District cannot meet its heavy "burden of making out the justice and wisdom of a departure from the beaten track" of the standard litigation process. *Landis*, 299 U.S. at 256.

While the District alludes to possible expenditures of time and resources "on matters that may not be in controversy in one or two months," ECF No. 36 at 2, and to its view that Plaintiffs' allegations were not accurate when this suit was filed, or have since become inaccurate, such routine expenditures and factual disputes do not justify a stay. To the contrary, they are standard aspects of litigation. Nor is there any dispute about the substance of the underlying District policy that is subject to this Court's review. To the extent that there is outstanding disagreement about certain underlying facts concerning removals of some of the Banned Books, this Court may rely upon the standard evidentiary tools to resolve any such factual disputes in preliminary injunction proceedings and later stages of litigation. Furthermore, evidence generated in consideration of the motion for preliminary injunction may be used later in this case because evidence "received on [a] motion [for preliminary injunction] and that would

3

be admissible at trial becomes part of the trial record." Fed. R. Civ. P. 65(a)(2); *accord Attorney Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009).

### III. Plaintiffs would be unduly prejudiced by a stay and it would be in the public interest to proceed.

The District's request for a stay must be weighed against Plaintiffs' interest in the expeditious vindication of their constitutional rights. Plaintiffs' motion for preliminary injunction, ECF No. 11, is fully briefed. Delaying its resolution would be highly prejudicial to Plaintiffs and other District students. The District's cavalier view that, with the passage of "one or two months," ECF No. 36 at 2, more of the Banned Books might be back on school library shelves ignores that: 1) such passage of time without a remedy is itself a violation of Plaintiffs' rights, and 2) Plaintiffs have challenged not only the removal of the Banned Books under District policy, but also the unconstitutional District policy that required and enabled their removal—policies that the District does not even argue it is intending to change absent this Court's intervention.

The District does not cite, and Plaintiffs were unable to find, any case granting a stay of a First Amendment claim with a pending motion for preliminary injunction absent a parallel state court criminal proceeding. This is likely attributable to the well-recognized principle that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1101–02 (8th Cir. 2013) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion)). As Judge Clark recently observed in preliminarily enjoining a school district's policy that restricted First Amendment rights, "[t]he First Amendment's protections apply equally to all viewpoints. That courts apply strict scrutiny to discrimination based on the speaker's viewpoint, no matter the forum, demonstrates the importance of this core principle." *Brooks v. Francis*

4

*Howell Sch. Dist.*, No. 4:22-CV-00169-SRC, 2022 WL 1185147, at *1 (E.D. Mo. Apr. 21, 2022).³ "Surely, if civil rights actions are of such importance that they may not be impeded or delayed by a person's incarceration, there must be at least an equal public interest in an ordinary citizen's timely vindication of his or her most fundamental right against alleged abuse of power by governmental officials." *Jones*, 72 F.3d at 1365 (Beam, J., concurring).

The District's motion admits that access to particular library materials remains blocked for all students because the District's policy requires the removal of books upon receipt of any challenge. ECF No. 35 at 2. This denial of access constitutes an ongoing loss of First Amendment freedom. *See* ECF No. 19 at 15-16 (citing *Pratt v. Indep. Sch. Dist. No. 831, Forest Lake*, 670 F.2d 771, 779 (8th Cir. 1982); *Parents, Fams., & Friends of Lesbians & Gays, Inc. v. Camdenton R-III Sch. Dist.*, 853 F. Supp. 2d 888, 899 (W.D. Mo. 2012)). Absent a preliminary injunction, Plaintiffs will continue to be deprived of the still-removed books pending committee review and access to other books that are challenged and removed pursuant to the District's automatic-removal policy, which occurs at the wholly discretionary direction of any student, parent, or guardian in the District and which can be (and based on the evidence before this Court likely has been) motivated by viewpoint discrimination. Moreover, additional delay will create the risk of further stigmatization of removed library materials, and the chilling of Plaintiffs' and other students' exercise of their First Amendment right to access information. *Id.* Plaintiffs are

---

³ Also pertinent here, Judge Clark held that likelihood of success on the merits in a challenge to a school district's policy could be established by demonstrating a fair chance of success on the merits because "unlike federal, state, and municipal governments, the board has no horizontal separation of powers; that is, the board is a policymaking body unto itself, without the check or balance that the executive branch serves for the legislative, and vice versa." *Id*. at *5.

entitled to seek relief for the alleged rights violation and would be unduly prejudiced if a stay was granted prior to issuance of a preliminary injunction.[4]

The indefinite nature of the requested stay further prejudices Plaintiffs, who because of the automatic-removal policy have been already deprived of access to library materials for several months and continue to have their access to four books completely blocked.[5] The District does not request a limited or temporary stay, but instead asks the Court to wait until it completes its reviews of the still-banned books, which it estimates will conclude by June 2022. Not only would this delay extend Plaintiffs' constitutional injury to the end of the current school year and well into the months when students engage in summer reading,[6] but there is also no guarantee that the review process would in fact be completed by that time. The District has already delayed committee review for months, consistent with the lack of any concrete deadline for review under its policy. *See* ECF No. 19 at 3-4; ECF No. 30 at 6-7 (discussing delays in committee review). The District does not acknowledge how long the stay could remain in force if committee review were further delayed for any of the still-banned books, nor the effect on access to any additional books that might be challenged and subject to review pursuant to District policy in the meantime.

---

[4] Plaintiffs acknowledge the prejudice caused by a stay would be diminished were a preliminary injunction issued to restore their access to library materials. District courts often stay First Amendment litigation challenging a government policy while the government appeals from the grant of a preliminary injunction.

[5] The District takes umbrage at the use of the verb "banned" to described the blocking of student access to library materials that were previously available. Plaintiffs note that the District's own Board members have used the same term. *See, e.g.*, ECF No. 12-18 at 62 (Board member stating, "[w]e as a school district, banned three books without even coming to the review committee.").

[6] *See* Wentzville School District 2021-2022 Academic Calendar, available at https://www.wentzville.k12.mo.us/cms/lib/MO02202303/Centricity/Domain/32/2021-2022%20%20Academic%20Calendar-Final%20approved%2012.17.20.pdf.

Plaintiffs are "constitutionally entitled to access to the courts and to the equal protection of the laws. 'The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.'" *Jones*, 72 F.3d at 1360 (citing *Marbury v. Madison*, 5 U.S. 137, 163 (1803)). A stay would unduly prejudice Plaintiffs and other District students—who already face an ongoing constitutional injury—by further delaying resolution of their constitutional claims, in stark contrast to the lack of harm faced by the District in proceeding.

The public's interest in the timely resolution of Plaintiffs' claims also weighs against a stay. "[I]t is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by City of Manchester*, 697 F.3d 678; *accord Fuller v. Norman*, 936 F. Supp. 2d 1096, 1098 (W.D. Mo. 2013). Allowing this case to proceed and preventing the District from violating students' First Amendment rights will serve the public interest. *Doe v. South Iron R-1 School Dist.*, 453 F. Supp. 2d 1093, 1103 (E.D. Mo. 2006).

### IV. A stay would not narrow or resolve the issues at this stage of the lawsuit.

Because Plaintiffs seek prospective relief against future application of the District's policy, and not only the return of the Banned Books to school library shelves, the District's suggestion that a stay might resolve or narrow the issues is illusory. Moreover, allowing this litigation to proceed would not prevent the District from completing its review of the still-banned books. Indeed, even assuming the District intends to review *Fun Home*, *All Boys Aren't Blue*, and *Heavy*—despite its repeated assertions in the record evidence that those titles were permanently removed—it can do so absent a stay, just as it could have before this litigation began, or in the ten weeks since this suit was filed.

This lawsuit targets the District policies that require automatic removal of library materials upon challenge by any parent, guardian, or student, as well as enable removal of materials based on disagreement with their viewpoint. While the District's bans of *The Bluest Eye*; *Fun Home*; *All Boys Aren't Blue*; *Heavy*; *Lawn Boy*; *Gabi, A Girl in Pieces*; *Modern Romance*; and *Invisible Girl* evidence how the District's policies violate students' First Amendment rights, Plaintiffs have come to Court to challenge the constitutionality of the policies pursuant to which they were removed, and to seek their return to school shelves because they were removed pursuant to unconstitutional policies—not to ask this Court to sit as a super-school-board to evaluate the wisdom of particular decisions the District could make under a valid policy.

It is undisputed that the District removed access to each of the Banned Books, at least for months, and did so pursuant to District policy. In addition, there is no dispute that District students previously had access to the Banned Books and then lost access because removal was required by the policy. Furthermore, there is no disagreement that the same process—automatic removal pending full review—will be followed again anytime someone challenges a book because this is precisely what District policy requires. This lawsuit asks the Court to address the constitutionality of the District's policy regardless of whether the particular books banned this year remain inaccessible to students. Discovery will not change because evidence about how and why students' access to the Banned Books was blocked will be no less relevant to the legal issues in this case even should their exile from library shelves cease.

For the foregoing reasons, the Court should deny the District's motion to stay.

Respectfully submitted,

/s/ Molly E. Carney
Molly E. Carney, #70570MO

8

Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
Emily Lazaroff, #73811MO
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
Fax: (314) 652-3112
mcarney@aclu-mo.org
trothert@aclu-mo.org
jsteffan@aclu-mo.org
elazaroff@aclu-mo.org

Gillian R. Wilcox, #61278MO
ACLU of Missouri Foundation
406 W. 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
gwilcox@aclu-mo.org

Vera Eidelman
ACLU Foundation
125 Broad St., 18 Fl.
New York, NY 10004
Phone: (212) 549-2500
veidelman@aclu.org

*Attorneys for Plaintiffs*

9